**B1040 (FORM 1040) (12/15)**

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/G. William McCarthy, Jr. | | | |
| DATE | | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re, <br><br> Chicora Life Center, LC, <br><br>                                Debtor. <br><br> Chicora Life Center, LC, <br><br>                                Plaintiff, <br><br> v. <br><br> UCF 1 Trust 1, <br><br>                                Defendant. | C/A No. 16-02447-jw <br><br> Adv. Pro. No. 16-_____-jw <br><br> Chapter 11 |

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND MOTION FOR PRELIMINARY INJUNCTION**

Chicora Life Center, LC ("Debtor") as debtor in possession moves the Court for entry of a Temporary Restraining Order ("TRO") preventing the Defendant, UCF 1 Trust 1 ("UCF"), from filing any action seeking to collect on the springing personal guaranty of Douglas M. Durbano ("Guarantor") as set forth more fully herein, and seeks the scheduling of a hearing on the Motion for Preliminary Injunction within fourteen (14) days and entry of a Preliminary Injunction as set forth herein to maintain the *status quo* pending this Court's consideration of the Debtor's Chapter 11 Plan of Reorganization. In support of the Motion, the Debtor respectfully submits the Affidavits attached hereto and the following facts, law and argument:

## *FACTS*

1. On May 16, 2016, the Debtor voluntarily filed a petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code. The Debtor is operating its business and

managing its assets as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). The Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1). Venue of these proceedings and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. As of the filing of this Motion, no committee has been appointed to represent the interest of unsecured creditors in this case pursuant to § 1102(a) of the Bankruptcy Code.

4. The Debtor owns and operates the Chicora Life Center (the "Center"), a 400,000 square foot facility that contains medical offices, office space, retail space, and public space, which occupies the site of the old naval hospital in North Charleston, South Carolina. The Center will serve as a social services hub, featuring myriad social, non-profit and care facilities – all in one building centrally located in Charleston County.

5. The Debtor's schedules show indebtedness of $14,997,444.16 to UCF secured by a mortgage on the Center.

6. On or about May 20, 2016 counsel for UCF notified Guarantor of a springing guaranty found in certain sections of the loan agreement between UCF and the Debtor, and further made demand on Guarantor for payment in full of $15,621,550.29 on or before June 1, 2016.

7. Debtor intends to file a Plan of Reorganization, which will call for a cash infusion from Guarantor, personally, in the approximate amount of $1,000,000 for the purposes of prospective tenant improvements to the facility.

8. The Debtor seeks injunctive relief preventing UCF from bringing suit against Guarntor, which will cause irreparable harm to the Debtor's ability to sucessfully effectuate a Plan of Reorganization.

9. The specific facts showing irreparable harm are set forth in the affidavit of Douglas M. Durbano accompanying this motion.

*LAW*

Rule 65 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, provides that a court may issue a TRO if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice or the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

When considering a motion for preliminary injunction, "[t]he Bankruptcy Court must determine four factors: (1) whether the plaintiff has shown a strong likelihood or probability of success on the merits; (2) whether the plaintiff has shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing a preliminary injunction." *McCullough v. Dubose (In re Pegasus Management and Investment, Inc.)*, C/A No. 05-06152-W; Adv. Pro. No. 05-80172-W (Bankr. D.S.C. June 20, 2005) (quoting *In re Fisher*, 80 B.R. 58, 60 (Bankr. M.D.N.C. 1987)). Harm to the plaintiff and the defendant are the most important factors. *Anderson v. Blair (In re Blair)*, C/A No. 99-08835-W, Adv. Pro. 99-80410-W (Bankr. D.S.C. Jan. 27, 2000). When the balance of hardships does not lean

3

decidedly in favor of the plaintiff, then a stronger showing of likelihood of success on the merits is required. *See Microstrategy Inc. V. Motorola, Inc.*, 245 F.3d 335 (4th Cir. 2001); *Direx Israel, Ltd. v. Breaktrhough Medical Corp.*, 952 F.2d 802 (4th Cir. 1991).

A bankruptcy court has jurisdiction to enjoin proceedings against non-bankruptcy co-defendants pursuant to § 105(a) of the Bankruptcy Code, as well as on the general equitable powers of the bankruptcy court under 28 U.S.C. § 1334. *A.H. Robins Company, Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). Acting under § 105, a bankruptcy court may enjoin a creditor from proceeding to enforce personal guarantees of the debtor's obligations when such enforcement injures the debtor's bankruptcy estate. *In re Litchfield Co. of South Carolina Ltd. Partnership,* 135 B.R. 797, 806 (W.D.N.C. 1992); *In re Lahman Mfg. Co., Inc.*, 33 B.R. 681, 682-84 (Bankr. D.S.D. 1983); *In re Otero Mills, Inc.*, 21 B.R. 777, 778 (Bankr. D.N.M.), *aff'd*, 25 B.R. 1018 (D.N.M 1982).

> The power to temporarily enjoin litigation against nondebtor principals of a corporate Chapter 11 debtor during the pendency of the reorganization case is a valid and useful exercise of Section 105. Used sparingly and judiciously, it protects the integrity of the reorganization process by restraining serious interference with the administration of the estate. The judicial discretion to enter a stay under Section 105, however, is susceptible to abuse. The burden is on the debtor to clearly establish the necessity for injunctive relief. This will ordinarily require convincing evidence of an adverse impact on the debtor's estate which seriously threatens the debtor's ability to formulate and carry out a plan of reorganization.

*In re Arrow Huss, Inc.*, 51 B.R. 853, 859 (Bankr. D. Utah 1985).

*DISCUSSION*

**I.    Notice for TRO.**

The undersigned attorney for the Debtor certifies that notice of the filing of the Motion has been served on the Defendant and on the attorney for the Defendant as set forth in the Certificate of Service, filed simultaneously herewith. In addition to service by First

4

Class Mail, the undersigned e-mailed a copy of the Motion, with the supporting affidavits and the proposed Temporary Restraining Order, to the attorney for the Defendant on the same day as it was filed.

## II. Irreparable Harm to the Estate.

Irreparable harm to a debtor's estate may be found where the guarantor's assets would not be available to fund the plan. *Otero Mills*, 21 B.R. at 778. Often the determination of harm to the estate rests on the ability to fund a plan. In *Century Machine Tools Inc.*, the request for injunctive relief to enjoin a bank from proceeding versus the debtor's president and majority stockholders was denied where there was no showing that an injunction would restore the debtor's ability to borrow money. 33 B.R. 606 (Bankr. S.D. Fla. 1983). Additionally, irreparable harm may be incurred by a debtor when the action sought to be enjoined would so consume the time, energy, and resources of the debtor's principals that it would substantially harm the debtor's reorganization effort. *Matter of Johns-Manville*, 26 B.R. 405, 419 (Bankr. S.D.N.Y. 1983).

The Debtor's plan of reorganization, which will be filed on or before August 14, 2016, will outline the process for bringing the Center to full occupancy. The Center will be aggressively marketed to potential tenants. As tenants execute leases, tenant improvements for their leased space will be completed before the tenant takes occupancy. After about half of the space is leased, the Center will qualify for commercial financing. But until that time, both the tenant improvements and the ongoing operating expenses must be funded by alternate means. In this case, Guarantor has committed to the personal infusion of $1,000,000 for the purposes of operations and for funding the necessary building improvements to bring the Center to full occupancy. Such improvements will occur as

5

leases are obtained but before the tenant takes occupancy, as the construction would disrupt tenants ability for peaceful enjoyment of their leased property. Further, the energy, input, and resources of Guarantor are necessary to this Debtor's reorganization effort.

### III.     Lack of Harm to UCF

In this matter, UCF is a first position secured creditor on real property that is valued in significant excess of UCF's lien. As of May 20, 2016, UCF claimed to be owed $15,621,550.29, which includes interest, fees and outstanding invoices added to the outstanding principal amount due of $13,900,000. Upon information and belief, the value of the Debtor's real property is in the range of $29,000,000 - $42,000,000. Based upon the equity cushion protecting UCF's interest, there is little risk of irreparable harm to UCF by granting the injunctive relief requested.

### IV.     Likelihood of Success on the Merits

In the context of a bankruptcy matter, the likelihood of success on the merits, means the probability of a successful plan of reorganziation. *In re Lamar Estates, 5 B.R. 328, 331* (Bankr. E.D.N.Y. 1980). This Debtor is a single asset real estate entity that intends to file a plan on or before August 14, 2016 when due, and the debtor is entitled to present a plan that can be considered by all the creditors. The Debtor was in bankruptcy for less than one week when UCF began its attempts to threaten and pressure Guarantor. The bankruptcy was precipitated by the attempted termination of the lease of the Center's anchor tenant, so the focus of the plan of reoganization will be obtaining replacement tenants. Based upon the total debt outstanding and the value of the Debtor's real property, the likelihood of successful reorganization should weigh in favor of the Debtor. But if UCF is allowed to proceed against the Guarantor, the Debtor will not be able to file a successful plan of

6

reorganization. *See Lahman*, 33 B.R. 681, 685 (precluding action on a personal guaranty where the debtor's plan was not yet due but collection action was threatened because "if the bank is allowed to proceed on the guarantees, the debtor's ability to file a successful plan will be significantly, if not totally, impaired because of the unavailability of credit."). The exact same basis for the injunction granted in *Lahman* exists in this case with the Debtor and this guarantor.

**V.    Public Interest**

The public interest here rightfully focuses on the promoting of a successful reorganziation, which is a paramount concern of the bankruptcy court. *Otero Mills, Inc.*, 25 B.R. 1018, 1021. Here the threatened action against Guarantor should be enjoined to allow the Debtor through the significant contributions of Guarantor to have a meaningful attempt at reorganization, a reorganization that will bring significant benefit to the community in which the Center is located. This is a single asset real estate case which calls for a plan of reorganization to be filed on or before August 14, 2016 and plan confirmation will likely be heard in October 2016.

*CONCLUSION*

The Debtor requests that the Court enter an order enjoining UCF from bringing a collection action against Guarantor based upon his springing guaranty of the Debtor pursuant to 11 U.S.C. § 105(a), Fed. R. Bankr. P. 7001(7), Fed. R. Bankr. P. 7065, and Fed. R. Civ. P. 65.

WHEREFORE, the Debtor respectfully requests the following:

1. That the Court enter a Temporary Restraining Order, *ex parte*, preventing UCF from pursuing an action against Guarantor based upon the springing guaranty;

7

2. That the Court set a hearing on the Motion for Preliminary Injunction within fourteen (14) days;

3. That, upon a hearing of the matter, the Court enter a Preliminary Injunction preventing UCF from pursuing an action against Guarantor through the Court's consideration of the Debtor's initial plan of reorganziation; and

4. For such other and further relief as the Court deems fit, just, and proper.

RESPECTFULLY SUBMITTED on this 1st day of June, 2016, at Columbia, South Carolina.

McCARTHY LAW FIRM, LLC

/s/ G. William McCarthy, Jr.
G. William McCarthy Jr. (2762)
Daniel J. Reynolds, Jr. (9232)
W. Harrison Penn (11164)
Attorneys for the Debtor
1517 Laurel St.
Columbia, SC 29205
(803) 771-8836
hpenn@mccarthy-lawfirm.com

8

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, <br><br> Chicora Life Center, LC, <br><br> Debtor. <br><br> Chicora Life Center, LC, <br><br> Plaintiff, <br><br> v. <br><br> UCF 1 Trust 1, <br><br> Defendant. | C/A No. 16-02447-jw <br><br> Adv. Pro. No. 16-_____-jw <br><br> Chapter 11 |

### AFFIDAVIT OF DOUGLAS M. DURBANO

I, Douglas M. Durbano, being duly sworn, depose and say as follows:

1. I am the alleged guarantor of the debts of Chicora Life Center, LC ("Debtor") as provided by the *Guaranty of Recourse Obligations* ("Guaranty") executed on August 23, 2014, and section 7.18(c) of the Loan Agreement between UCF 1 Trust 1 ("UCF") and the Debtor for Loan No. 30085, closed on August 28, 2014.

2. This Affidavit is given in support of the Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction (the "TRO" and "Preliminary Injunction"), filed simultaneously herewith.

3. Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on May 16, 2016.

4. On May 20, 2016, I received a letter from UCF making demand for payment in the amount of $15,621,550.29 on or before June 1, 2016.

5. The UCF loan is characterized as a "non-recourse" loan, meaning that the intent of the parties is that the loan be secured by collateral and not by a personal guaranty.

6. In 2015, when a modification to the loan was negotiated, UCF initially demanded that the modification be supported by my personal guaranty.

9

7. After much negotiation on this point, UCF agreed to accept a higher interest rate on the modified loan and forego the personal guaranty in connection with the modification.

8. The essence of UCF's current demand for payment of the entire amount claimed by UCF on the loan is therefore contrary to the recently-negotiated modification, in which UCF agreed to accept a higher interest rate in lieu of a personal guaranty on the modification.

9. In order to ensure the successful reorganization of the Debtor, I intend to personally contribute not less than $1,000,000 to facilitate the necessary pre-occupancy tenant improvements for the real property known as the Chicora Life Center (the "Center"), located at 3600 Rivers Avenue, North Charleston, South Carolina.

10. Upon information and belief, a reasonable market value for the Center is $29,000,000 - $42,000,000.

11. The Debtor is seeking a TRO and Preliminary Injunction in order to protect my ability to fund a necessary $1,000,000 cash contribution to the Debtor's Plan of Reorganziation, and such funding is essential to consumation of Debtor's plan.

12. There is a likelihood of irreparable harm to the Bankruptcy Estate if the TRO and subsequent Preliminary Injunction are denied due to my inability to fund the necessary $1,000,000 cash contribution to Debtor's Plan of Reorganization.

13. I have agreed to act as the personal guarantor as required to obtain certain bank loans or lines of credit used by the Debtor, both as has been used in the past and will be used in the Debtor's Plan of Reorganization.

14. The irreparable harm would result from the very filing of a collection action by UCF, because the filing of the action would certainly affect the willingness of my financial institutions to renew revolving lines of credit, and could also affect their willingness to release funds in which they hold a security interest.

15. In particular, there is a line of credit with Zions First National Bank which will renew in about four months, and I am the guarantor on that line of credit. A majority of the $1,000,000 cash contribution to the Debtor's Plan of Reorganization will come from this line of credit. Zions First National Bank will shortly begin its due diligence regarding the renewal of the line of credit.

16. Based on my knowledge of banking and banking regulation, including as a member of a bank loan committee, I am certain that the filing of a collection action by UCF against me personally will cause Zions First National Bank to decline to renew the line of credit.

17. The Debtor has no other source of income, and relies solely on the lines of credit for which I am the personal guarantor.

18. If UCF is allowed to spring into life a demand upon myself as a personal guarantor, I will lose my financial ability to provide the funding necessary to the success of the Debtor's Plan of Reorganization, and the focus of time and resources on the defense of such collection action and possible repayments thereof would eliminate any support that could have gone to support the Debtor.

19. Based upon the equity in the Center there is a lack of harm to UCF if they do not pursue my Guaranty of the Debtor's obligation.

20. I believe that with my $1,000,000 cash contribution there is a significant likelihood that the Debtor will be able to sucessfully reorganize.

21. I believe it is in the public interest to grant the TRO and Preliminary Injunction, which will maximize the assets that belong to the Debtor's Bankruptcy Estate and will advance the goals of the Bankruptcy Code in this regard.

FURTHER AFFIANT SAYETH NOT.

_____
Douglas M. Durbano, Individually

Sworn and subscribed before me
this 1st day of June, 2016

_____
Notary Public for the State of Utah
My commission expires: 01-26-2018

THERESA L. BABAUTA
Notary Public • State of Utah
Commission # 673697
COMM. EXP. 01-26-2018

11