# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Chicora Life Center, LC,<br><br><br>Debtor(s). | C/A No. 16-02447-JW<br><br>Adv. Pro. No. 16-80083-JW<br><br>Chapter 11 |
| Chicora Life Center, LC,<br><br><br>Plaintiff(s),<br><br>v.<br><br>UCF 1 Trust 1, a Delaware statutory trust,<br><br><br>Defendant(s). | **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION ON AN INTERIM BASIS** |

This matter is before the Court on the Motion ("Motion") of Chicora Life Center, LC ("Debtor"), for entry of a Preliminary Injunction to prevent UCF 1 Trust 1 ("UCF") from bringing a collection action on the guaranty of Douglas M. Durbano ("Durbano") of the indebtedness of Debtor. UCF filed an objection to Debtor's Motion for a Preliminary Injunction on June 9, 2016. A hearing concerning Debtor's Motion was held on June 10, 2016. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

**FINDINGS OF FACT**

1. Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court"), Case No. 16-02447-jw on May 16, 2016.

2. Debtor is managing its assets and operating its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.[2]

3. Debtor seeks a Preliminary Injunction to prevent UCF from filing a legal action based upon an alleged springing personal guaranty of Durbano for the obligations of Debtor on loan number 30085 (the "UCF Loan"), which closed on August 28, 2014.

4. UCF has made demand upon Durbano for payment in the amount of $15,621,550.29 ("Demand Amount") on or before June 1, 2016.

5. On June 1, 2016, on motion of Debtor, a Temporary Restraining Order prohibiting the filing of such an action by UCF was entered by this Court.

6. At the hearing on the Motion, Durbano testified that, in his view, the UCF Loan is a "non-recourse" loan, such that the parties intended that the loan be secured by collateral and not by a personal guaranty.

7. It appears that Debtor is a manager-managed Utah limited company. Durbano is Debtor's manager. Debtor's sole member is Chicora Garden Holdings, LC ("CGH"), another Utah limited company. CGH is also managed by Durbano, and has four members: Durbano Properties, LC (60%), QSTV, LLC (28%), BB&T Beachfront Development, LLC (10%), and Ferndale Properties, LLC (2%). Durbano Properties, LC, is also managed by Durbano and has a single member Summerhaze Company, LC ("Summerhaze"). Summerhaze is also managed

---

[2] Further references to the Bankruptcy Code shall be by section number only.

2

by Durbano and he testified to holding a 1% interest in the company. The remaining interest belongs to his wife and children as an estate planning vehicle.

8. According to Durbano's testimony, Debtor's Plan of Reorganization will provide a personal contribution from him of no less than $1,000,000 to pay operating expenses and necessary pre-occupancy tenant improvements for Debtor's real property at 3600 Rivers Avenue, North Charleston, South Carolina (the "Center").

9. Debtor is a single asset real estate entity as defined by § 101(51D)(A) and is therefore subject to the terms of § 362(d)(3) such that the automatic stay shall expire as to UCF within ninety (90) days of the Petition Date, in this case August 14, 2016, absent the filing of a Plan of Reorganization which has a reasonable likelihood of success, or the commencement of monthly payments.

10. According to Durbano's testimony, he is also a guarantor on a line of credit at Zions First National Bank ("Zions") which is expected to renew in approximately four months. The $1,000,000 cash contribution to Debtor's Plan of Reorganization will come from this line of credit through Antion Financial, LC, ("Antion"), a limited liability company also managed by Durbano and owned by Summerhaze.

11. According to the evidence presented by Debtor, if UCF is allowed to file a collection action against Durbano on the guaranty, it will impede, hinder and adversely affect Durbano's ability to renew the line of credit with Zions and jeopardize Debtor's ability to fund its operations and Plan of Reorganization.

12. Debtor also presented testimony from John Haas, who was qualified as an expert in credit and lending, to the effect that the filing and maintenance of an action against Durbano under the circumstances of this case would impede and hinder the renewal of the Zions line

3

of credit and Debtor's ability to obtain financing by causing most banks to perceive a higher risk.

13.   As Debtor's representative, Durbano testified that the Center had a reasonable market value as of June 1, 2016 of $35,000,000 to $37,000,000 and that Debtor relied on UCF's appraisal at the time of incurring the loan that the Center should be valued between $29,000,000 - $42,000,000 depending upon its stage of completion. UCF presented no contradictory evidence of value. Therefore, it appears that there is presently a significant equity cushion above the debt and first mortgage lien asserted by UCF.

14.   UCF asserts the documentary evidence demonstrated that Durbano agreed to "unconditionally guarantee to [UCF] the payment and performance of the Guaranteed Obligations . . . ." Section 1.01 of the Guaranty provided that Guarantor's obligation to pay the "Guaranteed Obligations" is triggered by the occurrence of a "Springing Recourse Event" under the Loan Agreement. The Guaranty defines the "Guaranteed Obligations" as "(a) [Debtor's] Recourse Liabilities, and (b) from and after the date that any Springing Recourse Event occurs, payment of all of the Obligations."

15.   It is UCF's position that section 1.01 of the Loan Agreement defines the "Obligations" as "any and all present and future liabilities and obligations of [Debtor] to [UCF], including those under or in connection with each Loan Document, together with all reasonable fees and expenses incurred in collecting any or all of such liabilities or obligations or enforcing any rights under each Loan Document, including all reasonable fees and expenses of counsel to UCF and of any experts or agents which may be paid or incurred by UCF in collecting any such items or enforcing such rights."

4

16.    UCF asserts that section 7.18(c)(ii) of the Loan Agreement identifies and describes several events which qualify as a "Springing Recourse Event," including "(E) [Debtor] files a voluntary petition under the Bankruptcy Code or files a petition for bankruptcy, reorganization, or similar proceeding pursuant to any other Federal or state bankruptcy, insolvency, or similar law[.]"

17.    Debtor's Schedule D: Creditors Who Have Claims Secured by Property indicates that there are two creditors with an interest secured by the Center and show UCF in first position in the approximate amount of $14,997,444.16 and Antion Financial, LC ("Antion"), a related entity, in second position with an estimated claim of approximately $6,918,641.41.

18.    Debtor's Schedule E/F: Creditors Who Have Unsecured Claims indicates priority claims held by Internal Revenue Service in the amount of $303.93 and SC Department of Employment & Workforce in the amount of $208.00. Other priority claims were scheduled for employees, but such claims were paid by a voluntary cash infusion from Antion post-petition on a non-recourse basis.

19.    Debtor's Schedule E/F further shows general unsecured claims in the aggregate amount of $169,166.57 held by fifteen (15) creditors.

## **CONCLUSIONS OF LAW**

Debtor has requested the Court enter a preliminary injunction under the Court's equitable powers established under § 105 of the Bankruptcy Code. Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The Fourth Circuit has held that the bankruptcy court's equitable powers includes the authority to stay related third-party litigation against non-debtors of the bankruptcy. See, e.g., Kreisler v. Goldberg, 478 F.3d 209, 215 (4th

Cir. 2007); Willis v. Celotex Corp., 978 F.2d 146, 149–50 (4th Cir. 1992); A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.), 788 F.2d 994, 1003 (4th Cir. 1986).

In Willis v. Celotex Corp., the Fourth Circuit outlined when a § 105 stay is appropriate:

> [A] bankruptcy court may properly exercise its authority under § 105(a) to enjoin an action against a third party when the court finds "'that failure to enjoin would [a]ffect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through the third party.'" Additionally, the bankruptcy court "'may enjoin a variety of proceedings . . . which will have an adverse impact on the Debtor's ability to formulate a Chapter 11 plan.'"

Willis, 978 F.2d at 149 (quoting Piccinin, 788 F.2d at 1003).

In addition to the guidance provided by the Fourth Circuit, when considering a preliminary injunction under § 105, this Court also applies the four-factor test traditionally used to determine if a preliminary injunction should be granted. See Newberry Atrium Professional Ctr., LLC v. TD Bank, NA (In re Newberry Atrium Professional Ctr., LLC), C/A No. 13-01377-JW, Adv. Pro. No. 13-80028-JW (Bankr. D.S.C. Apr. 3, 2013). Under the four-factor test, the movant seeking an injunction must establish: (1) that the movant is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Defense Council, Inc., 550 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L.Ed.2d 249 (2008).

**Debtor has shown that failure to enjoin would impact Debtor's ability to formulate a chapter 11 plan and affect the bankruptcy estate**

The evidence before the Court indicates that without an injunction, UCF's collection lawsuit on Durbano's guaranty will have a major impact on Debtor's ability to maintain its ongoing operations and formulate a chapter 11 plan. From the record, it appears that Debtor requires a source of funding to pay its ongoing operating costs, which include insurance,

6

utilities, security, payroll, professional fees and other costs to maintain the Center, while it attempts to settle issues with its anchor tenant, the County of Charleston, identify possible new tenants, and formulate a chapter 11 plan of reorganization. In addition, any new tenancy would likely require funds to upfit the space for occupancy.

Although through a somewhat complicated array of companies, Debtor has the vehicle for such interim funding through a line of credit with Zions, which is subject to renewal and is currently being reviewed for due diligence (including the credit risk associated with Durbano's guaranty on that line of credit). The only evidence before the Court indicates that UCF's efforts to enforce Durbano's guaranty through a collection action will impede, hinder and adversely affect the renewal of the line of credit with Zions. Further, the failure to renew the line of credit with Zions would not only eliminate Debtor's main source of funding but would trigger the requirement for repayment of the present balance of the line.

Durbano also testified that the $1,000,000 that will be contributed to Debtor from the Zions line of credit will be necessary to fund Debtor's chapter 11 plan of reorganization. While UCF asserts that the members of CGH have the means to separately provide necessary funding through capital contributions, the evidence does not allow the Court to conclude this assertion is true. Rather, the uncontradicted testimony of Durbano indicates the opposite in that the line of credit with Zions is the only likely and available source of funding for Debtor's ongoing expenses and its plan of reorganization.

UCF relies upon this Court's decision in <u>Newberry Atrium</u> as a basis to deny the preliminary injunction as Debtor has not established "unusual circumstances" to warrant a stay under § 105.[3] The Court's decision in <u>Newberry Atrium</u> addressed both a request for a

---

[3] The Court notes that the present case is readily distinguishable from <u>Newberry Atrium</u>. In <u>Newberry</u>, the medical office complex was completed and had a number of leases, which provided sufficient continuing

7

Case 16-80083-jw   Doc 31   Filed 06/15/16   Entered 06/15/16 16:13:57   Desc Main
Document      Page 8 of 14

preliminary injunction under § 105 and a request for an extension of stay under § 362(a)(1) and was based in large part on the Fourth Circuit's holding in <u>Piccinin</u>. After further review of the order in <u>Piccinin</u> and its progeny, it appears that the establishment of "unusual circumstances" is not required under Fourth Circuit precedent to stay third-party litigation under § 105.[4]

The record demonstrates that UCF's lawsuit against Durbano has a significant impact on the possible renewal of the Zions line of credit. Without the funding from that line of credit, it is unlikely that Debtor's ability to maintain its ongoing operations and to formulate and fund a chapter 11 plan of reorganization is placed at risk. This inability to maintain ongoing operations, including the protection of the Center, would also likely have a detrimental effect on the bankruptcy estate. Therefore, based on the evidence before the Court, Debtor has satisfied its burden of demonstrating under Fourth Circuit precedent that a stay under § 105 of the Bankruptcy Code is appropriate.

**Debtor has shown that it is likely to succeed on the merits**

In determining whether a preliminary injunction should be granted in the bankruptcy context, this Court and other Courts interpret the "success on the merits" factor to require the debtor to show that it has a reasonable likelihood of reorganization. See <u>Newberry Atrium</u>, C/A No. 13-01377-JW, Adv. Pro. No. 13-80028-JW at 6; <u>In re Kinard</u>, C/A No. 01-03621-W, at 6 (Bankr. D.S.C. Nov. 21, 2001); <u>In re Briar Creek Corp. Center Assoc. Ltd.</u>, 486 B.R.

---

income to the Debtor to pay its necessary ongoing expenses; therefore making immediate funding by a guarantor unnecessary. <u>Newberry</u>, C/A No. 13-01377-JW, Adv. Pro. No. 13-80028-JW, at 7. Further, unlike UCF's position in this case, the lender in <u>Newberry</u> was substantially undersecured. <u>Id.</u> at 3–4

[4] While the establishment of "unusual circumstances" is not required to stay third-party litigation under § 105, the Court finds for the reasons stated herein that the current matter nevertheless presents "unusual circumstances" as outlined in <u>Piccinin</u>.

681, 696 (Bankr. E.D.N.C. 2013); <u>In re Eagle-Picher Indus., Inc.</u>, 963 F.2d 855, 860 (6th Cir. 1992).

The evidence indicates that Debtor presently has a significant equity cushion above UCF's lien, which strongly supports a finding that the Debtor has a high likelihood of successfully reorganizing in this case and that the Debtor has a possibility of paying all of its creditors in full. Further, Durbano testified that Debtor is currently negotiating a takeout loan with Silver Arch for $31,000,000, which would not only provide necessary future operating capital to Debtor but would also allow for repayment in full of UCF and Antion's secured claims.

Also, Durbano and counsel for Debtor indicated at the hearing that progress has been made in its litigation with its anchor tenant, the County of Charleston, and the parties are hopeful that a settlement can be reached in that matter, which would assist Debtor's reorganization. Further, Debtor is working with a broker to seek new tenants for the Center in the event that Debtor and the County of Charleston are unable to reach a resolution that results in the County occupying the Center.

The facts presented to the Court indicate that due to the continued efforts of Debtor and the significant equity cushion in the Center, Debtor has a reasonable likelihood of reorganization and it has satisfied its burden on this factor.

**Debtor has shown that it will suffer irreparable harm in the absence of a preliminary injunction**

As the Court has already discussed, without a preliminary injunction, it is unlikely that Debtor will obtain any funding for its ongoing operations and complete a reorganization. This would result in irreparable harm to Debtor. <u>See also</u> <u>In re Brier Creek Corp. Ctr. Assocs. Ltd.</u>, 486 B.R. 681, 695 (Bankr. E.D.N.C. 2013) (finding that the detrimental impact on a debtor's

ability to reorganization resulting from a creditor's initiation of arbitration against a third-party guarantor of the debtor's debts sufficiently established a finding of irreparable injury).

Further, time is of the essence for Debtor's bankruptcy case. As a single asset real estate debtor as defined under § 101(51B), Debtor's case must be addressed in an expedited fashion. See 11 U.S.C. § 362(d)(3). The window for Debtor's opportunity for reorganization is closing and will be jeopardized if UCF is permitted to commence its collection action against Durbano.

For these reasons and based on the evidence presented at the hearing, Debtor has satisfied its burden of demonstrating that it will suffer irreparable harm if a preliminary injunction is not granted.

**Debtor has shown that the balance of equities tips in its favor**

Debtor has also made a clear showing that the balance of equities tips in its favor. The uncontradicted evidence indicates that there is significant equity in the Center above UCF's lien. In addition, no evidence was submitted to the Court indicating that the value of the Center is likely to decrease in the near future. Due to this equity cushion, UCF's lien appears to be adequately protected and it does not appear that a preliminary injunction will prejudice UCF's ability to collect as its lien will remain fully secured during the duration of the injunction. Furthermore, UCF presented no evidence which indicated it would be harmed by a delay of its collection actions on Durbano's guaranty.

Considering the harm that will result to Debtor if UCF is permitted to resume collection efforts against Durbano and the lack of harm to UCF, the balance of equities tips in favor of Debtor, and it has satisfied its burden on this factor.

**Debtor has shown an injunction is in the public interest**

In addition to the other factors previously considered, the Court must also consider the impact a preliminary injunction will have on the interest of the public. UCF contends that the entry of a preliminary injunction will be detrimental to the public interest as it will affect the contractual rights of a lender to enforce third-party guaranties independent of the bankruptcy process. Debtor contends that the injunction advances the public's interest by promoting a successful reorganization of Debtor, which will provide a significant benefit to the community in which the Center is located.

The Court agrees with Debtor. The provisions of the Bankruptcy Code, including the equitable powers of the bankruptcy court under § 105, are designed to protect the public interest. See Fisher v. Apostolou, 155 F.3d 876, 882 (7th Cir. 1998) ("[B]oth the terms and underlying purpose of the federal bankruptcy code are geared, at least in part, to protect the public interest . . . ."). Further, the public has an interest in the equitable administration of the Bankruptcy Code. See Continental Secs. Corp. v. Shenandoah Nursing Home P'ship, 188 B.R. 205, 220 (W.D. Va. 1995) (noting "the public interest in administrating the Bankruptcy Code"). Most importantly, the public has significant interest in promoting a viable reorganization of debtors. See Piccinin, 788 F.2d at 1008 ("The hardships which would be suffered irreparably by the debtor . . . together with *the unquestioned public interest in promoting a viable reorganization of the debtor* can be said to outweigh any contrary hardship to the plaintiffs." (emphasis added)).

Therefore, after balancing the public interests involved in this matter, the Court finds that the public's interest in the equitable administration of the Bankruptcy Code and the

public's interest in promoting reorganization outweighs the public interest concerns raised by UCF.

**Waiver of Relief under Section 105**

UCF also contends that Debtor has waived the right to seek an injunction under § 105 through Durbano's guaranty. The guaranty includes a specific provision stating that Durbano as guarantor and as a controlling party of Debtor waives the right to seek a § 105 stay. UCF presented no case law addressing the pre-petition waiver of a debtor's right to request a § 105 stay but analogizes the situation to a prepetition waiver of a debtor's right to object to a § 362 motion, which have been upheld as valid by this District in In re Darrell Creek Assocs., L.P., 187 B.R. 908, 913 (Bankr. D.S.C. 1995) and In re Cheeks, 167 B.R. 817 (Bankr. D.S.C. 1994) (Bishop, J.).

Initially, there are significant distinctions between the § 105 waiver provision in this case and the waiver in Darrell Creek. In this case, the § 105 waiver provision was not agreed to by the Debtor, but only by Durbano. Also, unlike the waivers in Darrell Creek and Cheeks, the § 105 waiver was not given as part of a consideration exchange in a workout agreement.

Further, it appears the § 105 waiver would not be enforceable under the factors set out by Darrell Creek. In that case, the Court listed four factors for considering whether to enforce a waiver of the §362 automatic stay, including (1) the benefit the debtor received from the agreement, (2) the loss of consideration or potential prejudice if the waiver is not enforced, (3) the effect of enforcement on other creditors and (4) whether there appears to be a likelihood of a successful reorganization. Darrell Creek, 187 B.R. at 912. As already discussed, Debtor appears to have a high likelihood of completing a successful reorganization and it does not appear that a finding that the § 105 waiver in not enforceable would prejudice UCF due to

Debtor's significant equity cushion in the Center. Further, the circumstances of the present matter weigh against the enforcement of the §105 waiver as it threatens the ability of other creditors to be paid through a successful reorganization of Debtor. Therefore, the balance of the factors listed in Darrell Creek weighs in favor of the Court not enforcing the § 105 waiver in Durbano's guaranty.

In addition, the § 105 waiver in this case appears to prohibit the debtor-in-possession from seeking statutory relief from the Court. This is analogous to depriving a debtor the benefits of filing bankruptcy, which has been routinely denied on public policy grounds. Section 105 is intended to provide the bankruptcy court with broad authority to take necessary action; therefore, the language of a contractual waiver should be subject to the strictest of scrutiny as it would usurp the bankruptcy court's authority. Further, § 105 allows the Court to act *sua sponte* if circumstances require, and no contractual waiver may negate that authority.

For the reasons stated in this Order, including the Court's review of the factors listed in Darrell Creek, the Court finds that the § 105 waiver contained in the Durbano's guaranty is not binding on Debtor and should not be enforced to limit the ability of Debtor to request injunctive relief under § 105.

## **CONCLUSION**

For the reasons stated herein, the Court finds that Debtor has satisfied its burden and that the evidence before the Court warrants a preliminary injunction under § 105 to stay UCF from filing or taking further collection actions as to Durbano's guaranty on an interim basis until **August 1, 2016**.[5] The Court will hold a further hearing on the interim preliminary injunction on **July 18, 2016 at 11:00 A.M.** at 145 King Street, Room 225, Charleston, South

---

[5] In addition to the reasons contained herein, the Court also grants this interim preliminary injunction under its authority established in § 105 to grant such relief *sua sponte*.

13

Carolina 29401. During the interim, Debtor will be expected to formulate with specificity its plan of reorganization and report to the Court on its efforts to obtain a takeout loan that is sufficient to pay UCF's claim in full.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
June 15, 2016

**FILED BY THE COURT**
**06/15/2016**



Entered: 06/15/2016

/s/ John E. Waites
US Bankruptcy Judge
District of South Carolina